

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00550-CV

Randy K. **SMITH**,
Appellant

v.

Lawrence **REID**, Royce Reid, Jennifer Heath and THL GP Inc.,
Appellees

From the 63rd Judicial District Court, Edwards County, Texas
Trial Court No. 3798
Honorable M. Rex Emerson, Judge Presiding

### OPINION ON REHEARING

Opinion by:    Rebeca C. Martinez, Justice

Sitting:       Catherine Stone, Retired Chief Justice[1]
               Karen Angelini, Justice
               Rebeca C. Martinez, Justice

Delivered and Filed:  June 24, 2015

AFFIRMED AS MODIFIED

The panel, on its own motion, has reconsidered its opinion and judgment. The court's opinion and judgment dated December 23, 2014 are withdrawn, and this opinion and judgment are substituted in its place. In this opinion, we revise our analysis relating to the award of attorney's fees.

---

[1] Not participating.

Randy K. Smith appeals the trial court's judgment enjoining him from using a road located on property owned by Lawrence Reid, Royce H. Reid, Jennifer Heath, and THL GP, Inc. (collectively, the Reids). In four issues, Smith argues that the trial court erred in: (1) declaring that the road is not a public road; (2) determining that Smith did not have an easement by estoppel; (3) determining that Smith is liable for breach of covenant; and (4) awarding attorney's fees. We modify the award of attorney's fees to comport with the trial testimony regarding segregation of fees. We further modify the award of appellate attorney's fees to condition such award on an unsuccessful appeal by Smith. As modified, we affirm the judgment of the trial court.

## BACKGROUND

The Reids are the owners of approximately 1,231.6-acres of real property located in Edwards County known as the Reid Ranch. The Reid Ranch consists of nine tracts of land. The Reids trace their ownership of the ranch to Royce I. Reid, who acquired the ranch by General Warranty Deed dated May 14, 1953. The May 14, 1953 Warranty Deed does not contain any exception for any easement benefiting adjoining property.

Smith owns 720.222 acres of land adjoining the Reid Ranch ("Smith Ranch"). The Smith Ranch includes two tracts: a 639.192-acre tract and an 81.03-acre tract (hereinafter referred to as the 640-acre tract and the 81-acre tract). Smith acquired the 640-acre tract from Denman L. Cloudt by General Warranty Deed dated May 8, 2003 ("Cloudt Deed"). The 81-acre tract was acquired by General Warranty Deed dated February 19, 2010. Neither Warranty Deed contains reference to conveyance of an easement or other appurtenant right over and across any portion of the Reid Ranch.

Edwards County Road 330 originates at a point of intersection with State Highway 55 on the southeastern boundary of Reid Ranch. County Road 330 traverses Reid Ranch. There is a road known as "the spur road" which departs from Edwards County Road 330 in a generally

westerly direction crossing from east to west across portions of the Reid Ranch. Specifically, the spur road crosses the sixth tract and the third tract of the Reid Ranch. The spur road then enters into the Smith Ranch at a point such that it intersects the boundary line between the Reid Ranch and the Smith Ranch. For a number of years, the Reids permitted Smith and his predecessors in title to use the spur road to conveniently access his 640-acre tract. The following map was admitted at trial:



(The thick black line is the spur road; the yellow line is County Road 330; and the blue line is Pulliam Creek).

Bay-Houston Towing Co. owned property south of the Smith Ranch. In 2007, Bay-Houston sued Smith in an attempt to establish the right to use the spur road to travel across Smith's property. Because Bay-Houston also had to use a portion of the Reid Ranch to reach its property, Smith asked for leave of court to join the Reids in the litigation, and pointed out that both the Reids and "Edwards County officials . . . contest and dispute that this roadway over the Reid Ranch is a public highway." In their answer to Smith's Third Party Petition, the Reids denied "that all or any portion of the roadway in question is a public road." To avoid litigation, the Reids entered into a Rule 11 agreement with Bay-Houston providing that they would give Bay-Houston permission to use the spur road across Reid Ranch if Bay-Houston won its suit against Smith. Smith then non-suited his third party claim against the Reids. Bay-Houston lost at trial and was not allowed to use the spur road across Smith's property, thus rendering the Rule 11 agreement moot.

In February 2010, Smith purchased an additional 81-acre tract bordering his 640-acre tract and the Reid Ranch to the east. The 81-acre tract gave Smith direct access from State Highway 55 to his 640-acre tract. Smith installed a gate to access his property from the state highway.

Upon noticing the new gate and learning that Smith no longer needed to cross Reid Ranch to access his property, Lawrence Reid wrote a letter to Smith dated March 11, 2010. The letter congratulates Reid on his recent purchase of land and further states:

> Since your new acquisition provides direct access to State of Texas Highway 55, I request we speak soon to discuss your current ingress through our property. We have acted neighborly in the past and wish to continue in such manner, however any necessity of yours to cross our property has now ceased. It is my belief and desire that an acceptable time frame for you to complete your new entrance be reached to accommodate everyone's needs and wishes.

The letter was posted on Smith's gate.[2] Smith did not respond to the letter; at trial, he claimed he never received the letter. Having never heard from Smith, in late May 2010, the Reids blocked

---

[2] Royce Reid testified that the letter was posted on the gate "numerous times."

the spur road with a tractor to prevent Smith from using it. Royce was at the house when Smith attempted to access the road. Royce informed Smith that he no longer needed to use the road. Smith responded that "he thought he had some type of right to traverse that property." Smith could not explain what right he thought he had, so Royce then moved the tractor and told Smith he had two months to find his proof of access. The Reids left the road unblocked all summer, but Smith never contacted the Reids, so the Reids blocked the road again on Labor Day weekend. This time they blocked the road with rocks and a gooseneck trailer. Smith still did not contact the Reids.

On November 18, 2010, the Reids filed suit against Smith, asking for a temporary injunction and for a declaration that Smith has no right to use the spur road. The Reids were granted a temporary restraining order prohibiting Smith from using the spur road across the Reid Ranch. Smith then began exclusively using his property to access the 640-acre tract from State Highway 55.

A few months later, Smith approached the Edwards County Commissioners' Court and asked the court to declare that the spur road is a county road. On February 8, 2011, the commissioners' court adopted a resolution titled "Smith Road Spur to County Road 330." The resolution provides that:

> [T]here is evidence that [the spur road] has been and remains a County Road, to-wit: (1) Resolution of the Edwards County Commissioners' Court dated June 11, 1998 and recorded in Vol. 12, Pg[.] 543 of the Minutes of the Commissioners' Court of Edwards County, Texas, (2) Written statement of Marshall Craig, former Precinct #2 Commission of Edwards County, Texas, recorded April 12, 1978 in Vol[.] 6 at [P]g[.] 29 of the Deed Records of Edwards County, Texas, and (3) verbal statement of Lee Sweeten, current Precinct #2 Commissioner of Edwards County, Texas, that he performed road maintenance work on said spur while employed by the Edwards County Road Department in the mid-1970s[.]

Based on this evidence, the commissioners' court found and ordered that the spur road "has been and continues to be a county road for all purposes," and that the "spur shall hereinafter be included as part of the county road inventory[.]" However, the resolution concludes that the spur road "shall

not be added to the official County Road map until such future time as [Transportation Code] proceedings are completed . . . and adding said spur road to the map is expressly ordered by this Court." The June 11, 1998 minutes reflect that the commissioners passed a motion providing that "the spur off of road #204[3] that goes to the Moore Ranch has been considered part of the County road system . . . and has been historically worked as a county road, therefore, be it resolved that it is hereby confirmed that it be part of the County Road system and shall remain as such for all purposes." There is no evidence that the spur road was subsequently added to the official County road map.

Smith did not inform the Reids or the trial court that he was seeking action from the County in 2011. He also failed to inform the commissioners that a lawsuit was pending and a temporary restraining order had been issued preventing him from using the spur road across the Reid Ranch. At trial, County Judge Souli Shanklin testified that the commissioners had no knowledge that the spur road was the subject of pending litigation, and that had they known, they would not have adopted the resolution. Shanklin testified that the commissioners' court learned about the lawsuit and temporary restraining order immediately after the February 8, 2011 meeting recessed, when the sheriff asked Smith "to go out with him to show him what needed to be done, and Smith told him that he could not because there was a restraining order against him on that deal."

When the Reids learned about the 2011 resolution, they joined Edwards County as a third-party defendant in the underlying lawsuit and challenged the validity of the resolution. On May 19, 2012, Edwards County entered into an agreed judgment with the Reids wherein the County agreed that the February 8, 2011 resolution "was not intended to acquire any public rights in any road spur off of County Road 330 as described in the resolution; and to the extent the resolution is

---

[3] County Road 330 was previously assigned the number 204; the Reids do not concede, however, that the "Moore Ranch" mentioned in the 1998 order is the same property as that currently located within the 640-acre tract.

alleged to be an act acquiring or attempting to acquire public rights in the spur under Chapters [sic] 281 or Chapter 258 of the Texas Transportation Code," the resolution is invalid, unenforceable, and void. Further, the County agreed that "the Resolution specifically withheld the addition of the spur as a county road on the County's Texas Transportation Code Chapter 258 County Road Map." Finally, the County agreed that it "made no effort to comply with the notice and other procedures required by Chapters 281 and 258 of the Texas Transportation Code." By entry of the agreed judgment, the Reids nonsuited the County. The County, therefore, did not participate in the underlying trial, and stipulated that it would agree to be bound by the trial court's judgment.

In May 2011, the Reids amended their petition to add an allegation related to a small, 1.165-acre piece of land located near the southern boundary of Reid Ranch and the northern boundary of Smith's 640-acre tract. The 1.165-acre tract of land has been referred to throughout this litigation as the "bubble." The "bubble" contains a natural spring that was fenced in to avoid washouts. The Reids' new claim alleged prior owners of the two ranches had agreed the "bubble" was a part of the Reid Ranch and that future owners would not claim the "bubble" by adverse possession. Smith filed an answer asserting the affirmative defenses of easement by estoppel, adverse possession, and impermissible collateral attack.

After multiple summary judgment motions were denied, the case proceeded to a bench trial on March 26, 2013. Prior to trial, the parties stipulated on the record that: there is no record access, easements, or agreements across the Reid tracts in favor of the Smith tracts; and there are no recorded dedications, purchases, condemnation, or final judgment of adverse possession in favor of the public as to any portion of the Reid Ranch as it relates to the spur road.[4] The trial court heard testimony from multiple witnesses and admitted documentary evidence. Following the

---

[4] The parties further stipulated that Smith abandoned his claim that the spur road is a public road by virtue of the doctrine of implied dedication and his claim of easement by necessity across the Reid property.

bench trial, the trial court ruled in favor of the Reids, finding that: the spur road is not a public road; the spur road is not an easement appurtenant to the Smith tract; the Cloudt Deed creates a cloud upon the Reids' title to the sixth and third tracts (i.e., the "bubble"); Smith claimed the bubble by adverse possession; the claim by Smith to adverse possession of the bubble was a breach of an express covenant not to so claim the land by adverse possession; and the Reids are entitled to enforce the terms of the express covenant not to claim the land by adverse possession. The trial court therefore ordered that the parties are authorized to place boundary fences and that the Reids are granted a permanent injunction against Smith prohibiting him from utilizing any portion of the Reid Ranch to access the Smith Ranch. The trial court also awarded the Reids court costs and attorney's fees in the amount of $79,171.30 for trial and $20,000 for appeal. The trial court signed two sets of findings of fact conclusions of law in support of its judgment.

## DISCUSSION

On appeal, Smith argues that the trial court erred in: (1) declaring that the spur road is not a public road; (2) determining that Smith did not have an easement by estoppel; (3) determining that Smith is liable for breach of covenant; and (4) awarding attorney's fees to the Reids.

### *Standard of Review*

In an appeal from a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and we review the legal and factual sufficiency of the evidence used to support them, just as we would review a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). In conducting a legal sufficiency review, we consider all of the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). In determining whether legally sufficient evidence supports the finding under review, we must consider evidence favorable to the finding if a reasonable fact finder could consider it, and disregard evidence

contrary to the finding unless a reasonable factfinder could not disregard it. *Id*. at 827. When a party attacks the legal sufficiency of an adverse finding on which it did not have the burden of proof, it must demonstrate that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). We will sustain a legal-sufficiency or "no evidence" challenge if the record shows one of the following: (1) a complete absence of evidence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810.

In conducting a factual-sufficiency review, we review all of the evidence in a neutral light and will reverse only if the evidence supporting the finding is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong or manifestly unjust. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). In a bench trial, the trial court is the sole judge of the witnesses' credibility, and it may choose to believe one witness over another; a reviewing court may not impose its own opinion to the contrary. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

We review a trial court's conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Although a trial court's conclusions of law may not be challenged for factual sufficiency, we may review the legal conclusions drawn from the facts to determine whether the conclusions are correct. *Id*. If we determine that a conclusion of law is erroneous, but the trial court nevertheless rendered the proper judgment, the error does not require reversal. *Id.*

*Declaration of the spur road as private*

Smith first argues that the trial court erred by declaring the spur road is a private road. Smith contends the declaration flies in the face of 30 years of official documents, including a 1998 order and a 2011 resolution from the Edwards County Commissioners' Court, showing that the spur road is a county road as a matter of law. Smith further argues that the Reids cannot collaterally attack the commissioners' actions, such that the 2012 agreed judgment between the Reids and Edwards County does not nullify the 2011 resolution. The Reids respond that the spur road is not a public road because the County failed to utilize any of the statutorily-authorized methods of acquiring the spur as public, and because the County clarified by way of a November 10, 1986 order that the spur is not a public road by omitting it from its official list of county roads.

Chapter 281 of the Texas Transportation Code sets out four methods by which a county with a population of 50,000 or less, such as Edwards County, may acquire a public interest in a private road. Under section 281.002, a county may acquire a public interest in a private road only by: (1) purchase; (2) condemnation; (3) dedication; or (4) a court's final judgment of adverse possession. *See* TEX. TRANSP. CODE ANN. § 281.002 (West 2013). A public interest in a private road may not be asserted until the commissioners' court has complied with the resolution requirement of section 281.005 and provided written notice to the owner of the road. *Id*. §§ 281.005-.006 (West 2013); *see also id*. § 258.002 (West 2013) (outlining procedures for adoption of county road map). It is undisputed that Edwards County did not comply with any of the statutorily-authorized methods of road creation as it relates to the spur road in either 2011 or 1998. Most notably, the County failed to comply with the notice provisions. Actions by a commissioners' court may be declared void for failure to comply with statutory requirements. *See Johnson v. Krieg*, 175 S.W.2d 102, 103-04 (Tex. Civ. App.—Austin 1943, writ ref'd w.o.m.) (affirming trial court's finding that commissioners' court order was void because it was made

without notice to landowner). Lawrence Reid testified that, prior to filing the lawsuit at issue, neither he nor any other member of his family was notified that Edwards County was contemplating the status of the road. He further stated that they never received any notice from the County with respect to the spur road, meaning that the Reids had no notice of the 1970s commissioners' statements or the 1998 order or the 2011 resolution. Jennifer Reid Smith testified similarly. The trial court was free to consider the evidence that no notice was provided to the Reids before designating the spur road as a county road, as well as the fact that the spur road was never added to the official county road map,[5] in concluding that the spur road is in fact a private road.

In addition, the trial court was free to consider the 2012 agreed judgment memorializing an agreement between the County and the Reids in which the County disavowed any interest the public might have in the spur road and agreed that the 2011 resolution is invalid, unenforceable, and void. The agreed judgment leaves no doubt that the County did not intend to acquire any public rights in the spur road. We also note that the 2011 resolution relied on the 1978 statement of former commissioner Marshall Craig and the "mid-1970s" verbal statement of current commissioner Lee Sweeten in finding that the spur road is a county road. Because individual members of the commissioners' court have no authority to bind the county by their separate actions, these statements do not constitute conclusive proof that the spur road is a public road. *See Ex parte Conger*, 163 Tex. 505, 357 S.W.2d 740, 743 (1962); *Canales v. Laughlin*, 147 Tex. 169, 214 S.W.2d 451, 455 (1948). The 1998 order similarly does not constitute conclusive proof that the spur road was public because, as earlier discussed, the order was made without prior notice to

---

[5] The 2011 resolution specifically provided that the spur road would not be added to the official county road map until the proper statutory requirements were satisfied and "adding said spur to the map is expressly ordered by this Court."

the Reids. *See* TEX. TRANSP. CODE ANN. §§ 281.005-.006 (commissioners' court must comply with resolution requirement of section 281.005 and provide written notice to landowner before asserting public interest in a private road).

Finally, we reject Smith's argument that the 2012 agreed judgment is an impermissible collateral attack on an order of the commissioners' court. *See Hanks v. Smith*, 74 S.W.3d 409, 412 (Tex. App.—Tyler 2001, pet. denied).[6] A collateral attack is an "attempt to avoid the effect of a judgment in a proceeding brought for some other purpose. A direct attack on a judgment, conversely, is an attempt to change that judgment in a proceeding brought for that specific purpose, such as an appeal or a bill of review." *Nw. Indep. Sch. Dist. v. Carroll Indep. Sch. Dist.*, 441 S.W.3d 684, 692 (Tex. App.—Fort Worth 2014, pet. denied). Because the County was joined in the lawsuit filed by the Reids, the 2012 agreed judgment between the County and the Reids cannot constitute a collateral attack on the 2011 resolution.

Mindful of the fact that the fact-finder is the sole judge of the witnesses' testimony and of the weight to be given to their testimony under both a legal and a factual sufficiency review, we conclude that the evidence presented at trial would allow "reasonable and fair-minded people to reach the" decision made by the trial court, and that the trial court's findings regarding the private nature of the road are not "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *City of Keller*, 168 S.W.3d at 819, 827; *Cain v. Bain*, 709 S.W.2d 175, 176

---

[6] In *Hanks*, a landowner sought a declaration that a certain road was public despite a commissioners' court ruling to the contrary. *Hanks*, 74 S.W.3d at 410-11. The appellate court recited the general rule that "absent a showing of gross abuse of discretion, fraud or collusion in the commissioners' court's opening of a road, the order of the commissioners' court is binding and conclusive" and the judgment is not subject to collateral attack. *Id*. at 412. The appellate court therefore held that the order of the commissioners' court reaffirming that the road was a county road was conclusive evidence on the issue of the status of the road, and that the trial court therefore erred in finding that the road was private. *Id*. The court went on, however, to note that a subsequent order of the commissioners' court "released all claim" the County had in the road, thereby abandoning the road. *Id*. Thus, the appellate court ultimately affirmed the trial court's declaration that the road was private. *Id*. at 414. To the extent that Smith contends that the *Hanks* court reversed the trial court's summary judgment, he is mistaken.

(Tex. 1986). Accordingly, we overrule Smith's sufficiency complaint and hold that the evidence presented at trial was sufficient to support the trial court's declaration that the spur road is not a public road.

### Easement by Estoppel

Smith next argues that the evidence is legally and factually insufficient to support the trial court's denial of an easement by estoppel. The trial court found that:

> The Reids never made any representation of the existence of an easement in favor of Smith or Smith's property across and over any portion of the Reids' property or the spur road; and

> The Reids never made any false or fraudulent statements or representations to Smith regarding access or use of the spur road, or represented to Smith that the Reids had or would dedicate the road to the public, or grant to Smith a private easement.

Three elements are necessary to the creation of an easement by estoppel: 1) a representation communicated, either by word or action, to the promisee; 2) the communication was believed; and 3) the promisee relied on the communication. *Storms v. Tuck*, 579 S.W.2d 447, 452 (Tex. 1979); *Holden v. Weidenfeller*, 929 S.W.2d 124, 131 (Tex. App.—San Antonio 1996, writ denied). Under this doctrine, a landowner may be estopped from denying the existence of an easement created by "representations" upon which another has detrimentally relied. *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 209 (Tex. 1963).

Smith contends that he proved the elements of easement by estoppel by way of the following undisputed evidence at trial: Smith, his predecessors in interest, and other landowners regularly used the spur road without contest by Reid; the spur road was the only way in and out of the Smith Ranch due to frequent washouts and floods. Smith leased the 640-acre tract for three years before purchasing it from Cloudt, and relied on the unimpeded use of the spur road when deciding to purchase the property. Smith made improvements to his land, and relied on use of the

spur road in doing so. He contends that the Reids' silence regarding the status of the road, and his reliance on such, constitutes an easement by estoppel.[7]

An easement by estoppel may not be predicated upon silence and passive acquiescence alone. *See Scott v. Cannon*, 959 S.W.2d 712, 721 (Tex. App.—Austin 1998, pet. denied) (mere silence cannot create an easement by estoppel except where there is a vendor-vendee relationship between the parties); *see also Stallman v. Newman*, 9 S.W.3d 243, 247 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (finding that passive acquiescence in and of itself cannot rise to the level of a "misrepresentation" so as to create an easement by estoppel where there has never been any unity of title between the two tracts of land). In the absence of a vendor/vendee relationship, there was no duty on the Reids to caution or warn Smith or his predecessors-in-title that they should make no improvements upon their property without a secure right of ingress and egress appurtenant to their land. *See Roberts v. Allison*, 836 S.W.2d 185, 188 (Tex. App.—Tyler 1992, writ denied).

It is undisputed that the Reids never made an affirmative representation to Smith that the spur road was public, or that an easement existed in favor of Smith. It is further uncontested that Smith's use of the road across the Reids' property was always permissive, up until the time he purchased the 81-acre tract. The Reids made no misrepresentation, nor did they engage in overreaching conduct by their silence; they had no duty to speak. *See Wilson v. McGuffin*, 749 S.W.2d 606, 610-11 (Tex. App.—Corpus Christi 1988, writ denied). Although Smith may have made improvements upon his property, the record contains no evidence that he made the improvements in reliance on any express promise by the Reids. Further, this case does not involve a landlocked tract, and once Smith purchased the additional acreage in 2010, alternative means of

---

[7] Smith also argues that the Reids' affirmative actions in the Bay-Houston litigation (i.e., agreeing to give Bay-Houston an easement over the spur road) operated to create an easement by estoppel.

ingress and egress to the Smith property were available without use of the spur road across the Reid Ranch. Accordingly, Smith has failed to establish any of the elements of an easement by estoppel and we therefore overrule his second issue.

*Breach of Covenant Not to Adversely Possess the "Bubble"*

Smith took title to his 640-acre tract subject to a covenant not to claim the Reids' land by adverse possession. The Reids' and Smith's predecessors in title executed the agreement because the terrain of their ranches required the fence-line to deviate from the true boundary line in several places, and neither wanted the deviation to turn into a claim of adverse possession. The Reids' predecessor in title, R.T. Craig, and Smith's predecessor in title, J.A. Blalack, struck the following agreement:

> WHEREAS, it was and is the intention of said parties to claim their respective lands according to survey lines and according to the description contained in the several deeds of conveyance under which said parties own and possess said respective lands and not to claim said lands as differently divided by the division fence between said parties as above shown . . . .
>
> WHEREAS, said parties desire to evidence in writing said arrangement and to show that they did not and do not intend to claim and possess said premises adversely to each other:
>
> NOW, THEREFORE KNOW ALL MEN BY THESE PRESENTS: That we, R.T. Craig and J.A. Blalack, in consideration of the premises, hereby mutually agree that we do not claim adversely to each other . . . J.A. Blalack for himself likewise contracts and agrees to and with the said R.T. Craig that he, the said J.A. Blalack has not claimed . . . the said portion of the South West one-fourth of Survey 50 which is cut into the outside inclosure [of] the said J.A. Blalack and further likewise agrees that he does not and will not claim or assert any interest or title therein but holds said premises subject to the claim and ownership of the said R.T. Craig and the said parties agree that this contract is binding upon their heirs and assigns.

The Reids pleaded that Smith's deed, which contained a "bubble" of land within their boundary, constituted a cloud on their title and constituted a breach of the covenant not to adversely possess. In the final judgment, the trial court found that "Smith claimed such 'bubble' by virtue of adverse possession" and that assertion of this claim is "in fact a breach of an express covenant not to so

claim land . . . by adverse possession." On appeal, Smith asserts that this finding is not supported by legally or factually sufficient evidence.

First, Smith argues that the Reids' breach of covenant claim is barred by a four-year statute of limitations. *See Malmgren v. Inverness Forest Residents Civic Club, Inc.*, 981 S.W.2d 875, 877 (Tex. App.—Houston [1st Dist.] 1998, no pet.) ("Actions to enforce restrictive covenants are controlled by the four-year statute of limitations."). The Reids respond that Smith has waived his affirmative defense of limitations because he failed to plead or argue it below. Smith's "Fourth Amended Original Answer, Counter-Claim and Affirmative Defenses," contains a section titled "Claims/Affirmative Defenses." Under this heading are two claims/affirmative defenses: (A) Easement by Estoppel and (B) Adverse Possession. The "adverse possession" heading contains the following language:

> The Defendant, relying on his own deed from D.L. Cloudt in 2003, claims ownership of "the bubble," which lies at the entrance to the Smith tract, *further states that Plaintiffs' alleged cause of action is barred by limitations set forth in Sections 16.024, 16.025[,] and 16.026 of the Texas Civil Practice and Remedies Code.* The deed to Smith dated May 2003 is recorded in Volume 212, Page 821 of the Edwards County deed records.

> Moreover, "the bubble" was conveyed to Smith's predecessor, Denman L. Cloudt ("Cloudt") by Deed dated November 16, 1998, recorded at Volume 161, Page 364 of the Edwards County deed records. "The bubble" is described by metes and bounds in the Deed to Cloudt. "The bubble" has been under fence and considered part of what is the Smith Ranch since the 1970's, prior to both Cloudt and Smith's ownership.

(Emphasis added).[8] Sections 16.024-.026 of the Texas Civil Practice and Remedies Code pertain to adverse possession; none of the sections contain a four-year limitations period. *See* TEX. CIV.

---

[8] The pleading also contains a second section titled "Affirmative Defenses." Under this heading, four affirmative defenses are listed as follows: "(A) Estoppel; (B) Estoppel / Silence / Duty to Speak; (C) Adverse Possession; and (D) Impermissible Collateral Attack." There is no mention of the term "limitations" within the discussion of these affirmative defenses.

PRAC. & REM. CODE ANN. §§ 16.024-.026 (West 2002) (providing three, five, and ten-year limitations period for adverse possession claims).

We agree that Smith's pleadings, which only briefly mention limitations under the adverse possession heading, failed to put the Reids on notice that he was claiming a limitations defense. *See* TEX. R. CIV. P. 45, 47. A review of Smith's live pleading would not have provided notice to a reasonably competent attorney of Smith's intent to assert the affirmative defense of limitations. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000); *Broom v. Brookshire Bros., Inc.*, 923 S.W.2d 57, 60 (Tex. App.—Tyler 1995, writ denied). Smith contends that absent the Reids' failure to specially except to his pleading, his pleading is sufficient and he did not waive his affirmative defense of limitations. We disagree that there was any defect in the pleadings calling for special exceptions. *See Auld*, 34 S.W.3d at 896 (stating an opposing party should use special exceptions to identify defects in a pleading so that they may be cured, if possible, by amendment). The Reids were entitled to rely on Smith's specific pleading of "adverse possession," and were not required to alert Smith to another possible theory of recovery. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 345 (Tex. 2011) ("A party is not required to specially except to a pleading defect if it lacks notice of the other party's intent."). Because limitations is an affirmative defense that is waived unless affirmatively pleaded, Smith has failed to preserve his limitations complaint for our review. *See* TEX. R. CIV. P. 94; *Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 611 (Tex. 2012).

Second, Smith contends that he is not bound by the Craig-Blalack agreement and that the agreement is not tied to the "bubble." We again disagree. The Craig-Blalock agreement provides that the "parties agree that this contract is binding upon their heirs and assigns." Because the original parties to the agreement intended it to be binding upon their heirs and assigns, the covenant runs with the land. *See Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 635 (Tex.

1987) ("In Texas, a covenant runs with the land when it touches and concerns the land; relates to a thing in existence or specifically binds the parties and their assigns; is intended by the original parties to run with the land; and when the successor to the burden has notice."); *see also Montfort v. Trek Res., Inc.*, 198 S.W.3d 344, 355 (Tex. App.—Eastland 2006, no pet.) (intent to run with the land may be evidenced by language stating that covenant binds drafters' "successors and assigns"). As such, Smith was bound by the covenant not to adversely possess the bubble.

Third, Smith argues the trial court's negative finding as to adverse possession precludes a finding of breach of covenant. This argument is disingenuous, because the agreement merely prohibits a "claim" or assertion of interest in the property—it is immaterial that the claim of adverse possession turns out to be unmeritorious or unsuccessful. We therefore cannot agree that the trial court erred in finding that Smith claimed the "bubble" by adverse possession and that assertion of this claim constituted a breach of an express covenant. We overrule Smith's issue related to breach of the covenant not to adversely possess the "bubble."

### Attorney's Fees

It is undisputed that the Reids sought recovery of attorney's fees under Chapter 38 (breach of the covenant), under Chapter 37 (the Declaratory Judgments Act), and under common law. As to attorney's fees, the trial court's judgment provides:

> Under the discretionary powers of the Court to award attorneys fees under Chapter 38 of the Texas Civil Practices [sic] and Remedies Code, the Plaintiffs are awarded attorneys fees against the Defendant, Randy K. Smith[,] through the trial in the amount of $79,171.30, and are conditionally awarded attorney fees against Defendant, Randy K. Smith[,] in the event that the Defendant Smith appeals this matter to the 4th Court of Appeals in the amount of $20,000.

On appeal, Smith asks that we vacate the award of attorney's fees. Smith claims: (1) the trial court awarded attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code; and (2) the Reids did not succeed on any Chapter 38 claims. *See* TEX. CIV. PRAC. & REM. CODE ANN.

§ 38.001 (West 2008).[9] We disagree with Smith's narrow reading of the judgment, and hold that the trial court's judgment awards attorney's fees based on both the Chapter 38 claim and the Reids' Chapter 37 claims for declaratory relief. We further hold the Reids' successful breach of covenant claim is equivalent to a Chapter 38 breach of contract claim.

With regard to whether the Reids are entitled to recover attorney's fees under Chapter 38, Smith argues that the Reids did not succeed on any Chapter 38 claims. We disagree. The Reids' claim for breach of the covenant not to adversely possess the "bubble" sounds in contract. *See id*. § 38.001(8); *Davis v. Canyon Creek Estates Homeowners Ass'n*, 350 S.W.3d 301, 313 (Tex. App.—San Antonio 2011, pet. denied) ("A restrictive covenant is a contract subject to the same rules of construction and interpretation as any other contract."); *Candlewood Creek Neighborhood Ass'n v. Gashaye*, No. 05-11-00380-CV, 2012 WL 3135721, at *2 (Tex. App.—Dallas Aug. 2, 2012, no pet.) (mem. op.) (holding that a covenant is a contract between the parties, and that recovery of attorney's fees is permitted on a breach of contract action under section 38.001(8)); *but see Tanglewood Homes Ass'n, Inc. v. Feldman*, 436 S.W.3d 48, 74-75 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (holding that breach of deed restriction cannot authorize award of attorney's fees under Chapter 38). Attorney's fees under Chapter 38 are mandatory, not discretionary. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001; *World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 683 (Tex. App.—Fort Worth 1998, pet. denied) ("When a prevailing party in a breach of contract suit seeks attorney's fees, an award of reasonable fees is mandatory under section 38.001 if there is proof of the reasonableness of the fees."). Accordingly, we conclude that

---

[9] Section 38.001 provides: "A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2008).

the Reids did prevail on a Chapter 38 breach of contract claim and that the award of attorney's fees under Chapter 38 was proper.[10]

With regard to whether the judgment awards attorney's fees only under Chapter 38, we hold that the award of attorney's fees is not limited to just the breach of contract claim, but is also based on the Reids' successful Chapter 37 claims for declaratory relief. Although the portion of the trial court's judgment pertaining to the award of attorney's fees is not a model of clarity, our reading of it—in conjunction with the trial court's findings of fact and conclusions of law—leads us to conclude that the trial court intended to award attorney's fees under both Chapter 37 and Chapter 38. *See Sw. Craft Ctr. v. Heilner*, 670 S.W.2d 651, 655 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.) (holding that when variance exists between judgment and findings of fact and conclusions of law, the findings of fact and conclusions of law control if they are filed after the judgment). In this case, the trial court's findings of fact and conclusions of law were filed over a month after the final judgment. Accordingly, the findings of fact and conclusions of law control. *See id.*

In its findings of fact, the trial court, as the factfinder, found: "No. 39. The Plaintiffs incurred reasonable and necessary attorneys' fees through trial on the merits in the amount of $79,171.30." In addition, the trial court made the following conclusions regarding attorney's fees:

> No. 2. Defendant Smith, in asserting a claim for adverse possession to land in the SW ¼ of Survey 50, Abstract 2705 GC & SF Ry Co., breached such express covenant, and in so breaching, Defendant Smith is liable for Plaintiffs' attorney's fees and costs under Civ. Prac. & Rem. Code §38.001.

> No. 22. The award to the Plaintiffs of attorneys' fees and costs including those which will result from an appeal to the Fourth Court of Appeals is equitable and just.

---

[10] Smith's reliance on *Perez v. Tex. Disposal Sys., Inc.*, 103 S.W.3d 591, 592 (Tex. App.—San Antonio 2003, pet. denied), is misplaced because it pertains to the recovery of attorney's fees under section 15.51 of the Texas Business and Commerce Code. *See* TEX. BUS. & COM. CODE ANN. § 15.51 (West 2011) ("Procedures and Remedies in Actions to Enforce Covenants Not to Compete").

Section 37.009 of the Declaratory Judgments Act provides: "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008). The Act imposes four limitations on the trial court's discretion in deciding whether to award attorney fees or not. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). *Id*. First, the factfinder must determine that the fees are reasonable. *Id*. Second, the factfinder must determine that the fees are necessary. *Id*. The remaining limitations on attorney fees awards are that they must be equitable and just. *Id*. Such matters are determined by the trial court, in its discretion, as a matter of law. *Id*.

Here, the trial court, as factfinder, found that the fees were reasonable and necessary. It also concluded that the award of fees was equitable and just. The trial court thus made the findings and legal determinations necessary to support an award of attorney's fees under the Declaratory Judgments Act. *See id*. Accordingly, when reading the trial court's findings of fact and conclusions of law in conjunction with the judgment, we conclude that the trial court's award of attorney's fees was also based on the Reids' successful claims for declaratory judgment. [11]

Finally, we address Smith's alternate complaint that the amount of attorney's fees awarded does not comport with the evidence of segregation of fees. At trial, counsel for the Reids testified that the reasonable and necessary attorney's fees incurred in prosecuting the Reids' case through trial was $87,613.30, and supported this figure with itemized invoices. Evidence was also introduced that appellate attorney's fees would amount to $20,000. The Reids' counsel further testified that he spent 10% of his time on the adverse possession claim; 30% on the abandoned claims of easement by necessity and public road by implied dedication; 30% on the 2011 resolution; and 30% on the temporary restraining order, request for declarations, and defending

---

[11] Smith does not challenge the sufficiency of the evidence supporting the award of attorney's fees.

the easement by estoppel. In accordance with the evidence presented, the trial court found that $79,171.30 should be awarded as attorney's fees through trial—a reduction of $8,442 in the amount proved by the Reids—and $20,000 should be awarded on appeal.

Based on the testimony segregating the fees, Smith contends the Reids could only recover ten percent of the total award of fees for their breach of contract claim. Although we agree the award must comport with the testimony segregating the fees, we hold that the Reids are entitled to the corresponding percentage of time spent on both Chapter 38 and Chapter 37 claims. Accordingly, we conclude the award of attorney's fees should be limited to seventy percent of the total amount of fees incurred through trial, or $55,419.91.[12]

We also agree with Smith that the award of appellate attorney's fees should have been conditioned on Smith's unsuccessful appeal to this court. Appellate attorney's fees must be conditioned on success in the appeal. *Gilbert v. City of El Paso*, 327 S.W.3d 332, 337-38 (Tex. App.—El Paso 2010, no pet.). We therefore modify the judgment to make the award of appellate attorney's fees contingent upon an unsuccessful appeal by Smith. *See Sundance Minerals, L.P. v. Moore*, 354 S.W.3d 507, 515 (Tex. App.—Fort Worth 2011, pet. denied). As such, Smith's final issue is sustained in part.

## CONCLUSION

The trial court's judgment is modified to award $55,419.91 in attorney's fees to the Reids based on the breach of covenant claim and the claims for declaratory relief. Further, the award of appellate attorney's fees to the Reids is conditioned on an unsuccessful appeal by Smith. With these modifications, the judgment of the trial court is affirmed.

Rebeca C. Martinez, Justice

---

[12] All but thirty percent of counsel's time was attributed to the claims for declaratory relief and the claim for breach of the covenant not to adversely possess. Counsel expressly testified that he spent thirty percent of his time on claims that were "abandoned." The award of attorney's fees cannot be premised on abandoned claims.