

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00105-CV

---

NORTHWEST INDEPENDENT
SCHOOL DISTRICT

APPELLANT

V.

CARROLL INDEPENDENT
SCHOOL DISTRICT

APPELLEE

----------

## FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

----------

## OPINION ON APPELLEE'S MOTION FOR EN BANC RECONSIDERATION

----------

After considering Carroll Independent School District's motion for en banc reconsideration and appellant Northwest Independent School District's response, we grant the motion. We withdraw our prior opinion of February 16, 2012 and substitute the following.

## Background

Carroll Independent School District (CISD) sued Northwest Independent School District (NWISD) alleging a boundary dispute with NWISD. The parties disagreed over the location of the boundary line between the two districts when other litigation between their relative counties was resolved. *See Tarrant Cnty. v. Denton Cnty.*, 87 S.W.3d 159 (Tex. App.—Fort Worth 2002, pet. denied) (op. on reh'g), *disapproved on other grounds by Martin v. Amerman*, 133 S.W.3d 262 (Tex. 2004). As a result of that litigation, the two counties' boundary line was definitively marked on the ground to reflect the counties' previous agreements; this resulted in the school districts' long-honored boundary line—since 1959[1]— being somewhat south of the counties' previously-agreed boundary line. *Id.* at 179–80; *Carroll ISD v. Nw. ISD*, 245 S.W.3d 620, 622–23 (Tex. App.—Fort Worth 2008, pet. denied). Thus, CISD claimed the school districts' line should move with the counties' line because the districts' line had been tied to the Tarrant-Denton boundary line.[2] *Carroll ISD*, 245 S.W.3d at 623. This would have expanded CISD's district into NWISD's territory, an area we will call the Disputed Area as the parties have in some of their briefing to this court. *See id.* In an effort to protect itself, NWISD filed the long-existing districts' boundary line

---

[1]NWISD's boundary was set in 1949. CISD's was set in 1959.

[2]When both school districts were created, the descriptions of their common boundary referenced only the then-existing Tarrant County-Denton County boundary line as their boundary line as opposed to a metes and bounds description.

metes and bounds description with the Texas Education Agency in accordance with the Texas Education Code. *See* Tex. Educ. Code Ann. § 13.010 (West 2012). CISD filed suit against NWISD in March 2005 claiming jurisdiction over the Disputed Area via trespass to try title and declaratory judgment actions. *Carroll ISD*, 245 S.W.3d at 623.

Shortly thereafter, NWISD filed a motion to dismiss CISD's suit for want of jurisdiction, which the trial court granted. *Id.* The trial court based its decision primarily on its conclusion that the dispute between the two districts was a boundary dispute that should first be determined by the "appropriate authority or authorities as required by the Texas Education Code" and that jurisdiction did not lie in the district court until the parties had first pursued their administrative remedies. *Id.*

CISD filed an interlocutory appeal challenging the dismissal of its claims against NWISD, and our court issued an opinion reversing the trial court's decision to dismiss and remanding the case to the trial court. *Id.* at 626. In that opinion, we specifically held that the Texas Education Code did not apply because one district was not seeking to actually detach or annex additional property into its district, which would have required TEA oversight, but was instead seeking a judicial declaration of the "parties' rights, interests, and obligations" as to the Disputed Area and the location of its boundary, which could be appropriately resolved through a declaratory judgment action. *Id.* at 625–26.

3

In our opinion, we also held that CISD is a "person" for purposes of the Declaratory Judgments Act and that dismissal for lack of jurisdiction on that ground was improper. *Id.* at 625; *see* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001, 37.004(a), (c) (West 2008). Furthermore, we addressed NWISD's attack on the trial court's jurisdiction based on its theory that the validity of annexation of territory can only be determined by a *quo warranto* proceeding. We disagreed with this basis for the jurisdictional plea as well, noting that the two school districts were merely in a boundary dispute, not attempting to annex additional territory. *Carroll ISD*, 245 S.W.3d at 626.

Upon remand, after the parties had conducted further discovery of the jurisdictional facts and filed amended pleadings, NWISD filed an additional plea to the jurisdiction seeking dismissal, which the trial court denied. NWISD also filed a motion for summary judgment, which the trial court granted as to CISD's claims for loss of tax revenue and for trespass to try title. After NWISD filed its second plea to the jurisdiction and motion for summary judgment, CISD further amended its petition to assert additional grounds for relief, which required NWISD to file a supplemental second plea to the jurisdiction that the trial court also denied. Thus, in this interlocutory appeal, NWISD is the appealing party and is challenging the trial court's denial of its supplemental plea to the jurisdiction.

### Does the Law of the Case Doctrine Apply?

In two of its three issues, NWISD challenges two legal conclusions already decided by this court in the first interlocutory appeal brought by CISD: that the

4

trial court did not lack jurisdiction (1) because CISD was not required to follow the Texas Education Code's administrative procedure for detaching and annexing property inasmuch as it is not seeking to detach and annex property and (2) because CISD is included in the definition of "person" in the Declaratory Judgments Act. Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001–.011; *Carroll ISD*, 245 S.W.3d at 624–25. Because these two issues have been decided previously by this court, our first opinion in this case constitutes the "law of the case" and determines the resolution of NWISD's first two issues.

Under this doctrine, a decision rendered in a former appeal of a case is generally binding in a later appeal of the same case. *In re Assurances Generales Banque Nationale*, 334 S.W.3d 323, 325 (Tex. App.—Dallas 2010, orig. proceeding); *see In re Henry*, 388 S.W.3d 719, 727 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding [mand. denied]); *Truck Ins. Exch. v. Robertson*, 89 S.W.3d 261, 264 (Tex. App.—Fort Worth 2002, no pet.). Having decided an issue previously, a court of appeals is not obligated to reconsider the matter in subsequent appeals. *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 182 (Tex. 2012); *see also In re Henry*, 388 S.W.3d at 727; *In re Assurances Generales Banque Nationale*, 334 S.W.3d at 325; *Woods v. VanDevender*, 296 S.W.3d 275, 279 (Tex. App.—Beaumont 2009, pet. denied) (all citing *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003)). It may do so in its own discretion, however, and there is not an absolute bar to reconsideration if subsequent hearings, briefing, or pleadings have modified the facts or relief

5

sought. *See Briscoe*, 102 S.W.3d at 716–17. When, however, the jurisdictional issue is really one of law, our discretion to revisit the issue will be used sparingly, if at all. *See, e.g.*, *In re Henry*, 388 S.W.3d at 728; *City of Dallas v. Jones*, 331 S.W.3d 781, 784–85 (Tex. App.—Dallas 2010, pet. dism'd). Regardless, our review of the record and the revised pleadings leads us to decline the invitation to revisit these issues since the issues relate to questions of law. NWISD's first and second issues are therefore overruled.[3]

### Is This a Collateral Attack on Prior Elections and County Commission Orders?

In its third issue, NWISD claims the trial court lacked jurisdiction because CISD's suit is "an untimely contest and collateral attack of the [district's] 1948 and 1949 elections and [commissioners courts'] orders creating [NWISD] and its boundaries." We did not address this issue in our 2008 opinion; therefore, we address it now.

NWISD claims that CISD's request for a declaratory judgment is simply a means to an end that circumvents the proper regulatory scheme.

### Use of Declaratory Judgments Act When Boundary Involved or Judgment Questioned

After we issued our opinion in *Tarrant County v. Denton County*, our state's supreme court issued its opinion in *Martin v. Amerman*, which held a

---

[3]We will, however, address NWISD's refinements of its arguments against the applicability of the Declaratory Judgments Act that are contained within its third issue below.

portion of our opinion invalid, stating that the use of the Declaratory Judgments Act to decide a boundary determination was incorrect and that a boundary dispute could be resolved by one method only: a trespass to try title action. *Martin*, 133 S.W.3d at 267–68 (holding trespass to try title statute governs method for determining title to real property and boundaries as well), *superseded by* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(c) (reversing *Martin's* holding that relief under the Act is unavailable for boundary disputes). Quickly, however, the state legislature overruled *Martin* by adding subsection (c) to section 37.004 of the Declaratory Judgments Act. Tex. Civ. Prac. & Rem. Code Ann. § 37.004(c). This provision authorizes a party to seek a determination on the construction of "*a statute, municipal ordinance, contract, or franchise*" even when the only determination concerning title to real property involves the "proper boundary line between adjoining properties." *Id.* § 37.004(a), (c) (emphasis added); *see* Act of May 17, 2007, 80th Leg., R.S., ch. 305, § 1, 2007 Tex. Gen. Laws 581, 581 (adding subsection (c) effective June 15, 2007).

NWISD misconstrues the impact of the legislature's revision to section 37.004. Subsection (c) does not say that one may now *only* seek a determination of a boundary line under the Declaratory Judgments Act *if* one is seeking a determination of title. It says simply and only that *if* one is seeking a determination of title, then *notwithstanding that fact*, one may seek a determination or declaration of a boundary under the Declaratory Judgments Act. Tex. Civ. Prac. & Rem. Code Ann. § 37.004(c). In other words, if determining a

7

boundary line may also result in declaring title to real property, a party is no longer prohibited from seeking a declaration of rights under the Declaratory Judgments Act instead of solely under the property code's trespass to try title scheme as the supreme court had previously declared. *See Martin*, 133 S.W.3d at 267–68. The legislation simply removed the prohibition, based on the supreme court's construction of the Act in *Martin*, against using the Act to determine boundaries.[4] Therefore, we conclude that the determination of a boundary is no longer a disqualifier under the Act, even when title may be affected.

NWISD also claims that because the case was filed before the effective date of the amendment to section 37.004, the amendment cannot apply to CISD's action. This claim is incorrect for two reasons. First, after the original remand which reversed the trial court's grant of a dismissal, the parties underwent further discovery, and CISD amended its suit after the amendment's effective date, June 15, 2007.[5] Secondly, even if the first petition was filed

---

[4]We do, however, agree with NWISD that many Texas cases have erroneously and perpetually confused the use of the term "boundary" for both a boundary line that actually determines title, i.e., ownership of real property, and a state or political subdivision boundary line that merely determines "territory." Thus, NWISD is correct when it states that this is not a boundary line dispute that involves actual title to, and therefore ownership of, land; it is a boundary dispute that involves the boundary between two independent school districts and the areas to be governed, educated, and taxed by each.

[5]The enacting legislation states that the amendment "takes effect immediately." Act of May 17, 2007, 80th Leg., R.S., ch. 305, § 2, 2007 Tex. Gen. Laws 581, 581.

8

before the amendment's effective date, applying procedural, remedial, or jurisdictional statutes retroactively does not violate the Texas constitution's prohibition on retroactive laws. *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia*, 324 S.W.3d 544, 548 (Tex. 2010). While we generally presume that statutes are prospective unless they are expressly made retroactive, procedural and remedial laws generally do not affect vested rights and should be enforced as they exist at the time judgment is rendered. *City of Austin v. Whittington*, 384 S.W.3d 766, 790 (Tex. 2012); *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 198 (Tex. 2007); *see also* Tex. Gov't Code Ann. § 311.022 (West 2013). Additionally, statutes that do not deprive the litigants of a substantive right but speak more to the power of the court may generally be applied at the time of enactment to a pending case. *Estate of Arancibia*, 324 S.W.3d at 548. The Declaratory Judgments Act is such a remedial statute. *See MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 670 (Tex. 2009). We conclude and hold that because the Declaratory Judgments Act is remedial in nature, the revision to section 37.004(c) may be applied to pending cases.

Next, NWISD claims that the Declaratory Judgments Act cannot be used to declare parties' rights under the statutes and ordinances here simply because it does not list the word "judgment" in its list of items that may be construed under the Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004 (a), (b). Again, we disagree.

9

When called upon to determine the meaning and scope of a statutory provision, our primary objective is to ascertain and give effect to the legislature's intent. Tex. Gov't Code Ann. § 312.005 (West 2013); *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). We look to the plain and ordinary meaning and the words of the statute itself as the best indicator of legislative intent. *Bouldin v. Bexar Cnty. Sheriff's Civ. Serv. Comm'n*, 12 S.W.3d 527, 529 (Tex. App.—San Antonio 1999, no pet.). We may consider the object to be attained and the consequences of a particular construction, among other things. Tex. Gov't Code Ann. § 311.023 (West 2013); *see also In re Smith*, 333 S.W.3d 582, 588 (Tex. 2011) (orig. proceeding).

First, the Act specifically authorizes the use of the courts to declare parties' rights under a written contract or "other writings constituting a contract." Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a). NWISD was the creation of the commissioners courts of Tarrant, Wise, and Denton Counties after elections held in each of those counties approved the consolidation of some of their school districts. Likewise, ten years later, the Tarrant County Commissioners Court also created CISD and entered its order adopting the voters' election to create it. The order creating CISD refers to its northern boundary as the Tarrant-Denton County line, thus honoring the previously declared southern boundary for NWISD, which Tarrant County voted for and approved. Arguably, these elections and commissioners courts' orders fall generally within the Act's phrase of "other writings constituting a contract." *Id.*

10

Second, the Declaratory Judgments Act specifically authorizes determinations of "rights, status, or other legal relations" under "statute[s], ordinance[s], contract[s], or franchise[s]." *Id.* The Act allows an interested person to have his or her rights, status or legal relations determined when they arise under such instruments, statutes, ordinances, or franchises. *Id.* Also, we have already held that the word "person" includes independent school districts. *Carroll ISD*, 245 S.W.3d at 625. Thus, a school district may have its rights or legal relations declared under the Act. Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a).

Moreover, courts apply the rule of *ejusdem generis* so that a listing of several items does not necessarily exclude others of a similar kind or class unless the listing is clearly intended to be exclusive.[6] And, importantly, the Act itself specifically states, "The enumerations in Sections 37.004 and 37.005 *do not limit or restrict the exercise of the general powers conferred in this section* in any proceeding in which declaratory relief is sought and a judgment or decree will terminate the controversy or remove an uncertainty." *Id.* § 37.003(c) (emphasis added). This directive evidences a clear legislative intent to construe the enumerations broadly so as to allow the courts to exercise the powers conferred by the statute. *See id.* § 37.002(b) (providing that Act is "to be liberally construed and administered"). Importantly, the resolution of a dispute such as this would

---

[6] *See Black's Law Dictionary* 594 (9th ed. 2009).

11

"terminate the controversy" and "remove an uncertainty," thus meeting the stated legislative goals. *See id.* § 37.003(c).

We therefore conclude and hold that the Declaratory Judgments Act applies when, as here, a school district seeks to resolve a controversy regarding a judgment or order issued by a commissioners court even though the words "judgment" and "order" are not contained within the specific enumerations listed in the Act.

**Is This a Prohibited Election Contest or Collateral Attack?**

NWISD further claims that even if CISD is a person within the meaning of the Declaratory Judgments Act, and even if the Act encompasses a determination of the rights or status of a person under such a judgment or order, the Act cannot apply because CISD's claim is still a collateral attack on the elections held by the two school districts in adopting their boundary and their respective territories, as well as the orders issued to implement those elections.

It points to sections 233.001 through 233.014 of the Texas Election Code. Tex. Elec. Code Ann. §§ 233.001–.014 (West 2010). NWISD argues that the elections creating the district that were held in 1948 and 1949 established NWISD's boundaries and that to challenge those elections, CISD must have timely filed a notice of the contest. We agree with NWISD. There are multiple reasons why CISD cannot pursue an election contest now.

First, CISD is not a proper party to challenge the election held by NWISD; only qualified voters "of the territory covered by an election on a measure may

12

contest the election." *Id.* § 233.002. Second, the time for filing a petition to contest such an election has long passed. *Id.* § 233.006. Any contest must be brought within thirty days of the date the official result is determined, which is an obvious and fatal impediment in this case. *See id.*

Furthermore, and more importantly, the result of an election that has not been challenged by a proper contest cannot be collaterally attacked, and the "commissioners' court [order] declaring the result of the election is final." *Horn v. Gibson*, 352 S.W.3d 511, 517 (Tex. App.—Fort Worth 2011, pet. denied). Thus, we conclude and hold that to the extent CISD is attempting to contest an election, this suit is both a defective and untimely contest of that election. We sustain this portion of NWISD's third issue.

We now turn to whether CISD's suit is also an invalid collateral attack on the orders resulting from the election. A collateral attack is an "attempt to avoid the effect of a judgment in a proceeding brought for some other purpose. A direct attack on a judgment, conversely, is an attempt to change that judgment in a proceeding brought for that specific purpose, such as an appeal or a bill of review." *Burgess v. State,* 313 S.W.3d 844, 852 n.10 (Tex. App.—Fort Worth 2010, no pet.). This court has previously held that collateral attacks on prior judgments or orders adopting election results are prohibited, especially when no prior appeal or challenge to such judgments has been made. *Tarrant Cnty.*, 87 S.W.3d at 174 (*citing Yoakum Cnty. v. Gaines Cnty.*, 163 S.W.2d 393, 396–97 (Tex. 1942)); *cf. Tarrant Cnty. v. Shannon*, 104 S.W.2d 4, 9 (Tex. 1937)

13

(recognizing that judgments of commissioners courts are coequal with judgments of other courts and district court may review those judgments only for lack of jurisdiction or clear abuse of discretion of scope of legal authority). There was no such timely challenge here. The districts' agreements or commissioners courts' orders were not questioned until this challenge. Cities, counties, and political subdivisions act through their elections, ordinances, and agreements and the orders or judgments they create to implement the same. *Killam Ranch Props., Ltd. v. Webb Cnty.*, 376 S.W.3d 146, 154 (Tex. App.—San Antonio 2012, pet. denied) (op. on reh'g); *Amaro v. Wilson Cnty.*, 398 S.W.3d 780, 785 (Tex. App.—San Antonio 2011, no pet.). But in this case, as opposed to *Tarrant County v. Denton County*, in which a party was seeking to avoid the previously agreed upon orders, a fact has changed that makes a term in the agreement ambiguous: the parties are seeking a clarification or determination of the meaning of a phrase in their agreements as a result of an event that happened years after the parties entered into the agreements and entered orders implementing those results. In other words, postjudgment events have created an ambiguity in their orders that makes the enforcement of such orders uncertain at best. Neither party may seek the nullification or avoidance of their agreements, orders, or judgments that resulted therefrom, but they may seek an interpretation or clarification of those agreements, orders, and judgments when external factors have made such interpretations uncertain. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI*

14

*Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (defining latent ambiguity as one arising from a collateral matter as applied to the contract).

If, however, CISD is seeking to avoid the result of the 1948 and 1949 elections and orders by now claiming the Disputed Area, despite its acquiescence for over sixty years, then we agree that this would be both a defective, untimely election contest and an impermissible collateral attack on the commissioners courts' orders certifying the election results that created NWISD and established its boundary. As noted in NWISD's motion for summary judgment, "A declaratory judgment action is intended to establish *existing* rights, status, or other legal relationships" and is not to "be used as an affirmative ground of recovery to *alter* rights, status or relationships." We agree that one cannot do by a declaratory judgment action what one cannot otherwise do. *See Bonham State Bank v. Beadle*, 907 S.W.2d 465, 468 (Tex. 1995); *Segrest v. Segrest*, 649 S.W.2d 610, 611–12 (Tex.), *cert. denied*, 464 U.S. 894 (1983).

However, if the suit for declaratory relief is really just one to clarify a term incorporated into both commissioners courts' agreements, and therefore the judgments and orders they both entered, then this narrow objective or request for relief is properly addressed in a declaratory judgment action.

**Responses to Concurring and Dissenting Opinions**

In response to Justice Dauphinot's concurring and dissenting opinion, we respectfully disagree that the majority's remand expands the relief available to CISD. The majority opinion limits the relief available to CISD only to locate the

*existing* sixty-year-old boundary line between the districts. In CISD's fifth amended petition filed February 17, 2010, it stated,

> CISD contends that the common boundary between the two school districts is located on the county line, as determined by *Tarrant County v. Denton County*[.] . . .
>
> . . . Plaintiff CISD seeks a declaratory judgment that the common boundary between CISD and NWISD lives along the Tarrant/Denton County line as determined by *Tarrant County v. Denton County* . . . .

The answer to this question necessarily encompasses a declaration of *where the sixty-year boundary* has been located and is located. Our remand is limited to that determination and is therefore properly provided for in this narrow remand: i.e., where is the actual line that both parties agreed to, voted on, approved, adopted, and have recognized for sixty years?

Regarding Justice Gardner's concurring and dissenting opinion, the majority opinion does not conflict with the prior opinion in this case or in our *Tarrant County v. Denton County* case. We agree with our prior opinion in this case by saying that whether CISD couches its suit for declaratory judgment relief as an attempt to determine where the common boundary line is—as it did in its pleadings below—or as an attempt to annex the Disputed Area (which we previously stated it could not do), this opinion actually reaffirms and recognizes our prior opinions. Since CISD says it was not seeking to annex additional territory into its district in the first suit, the issue of jurisdiction to hear that action was not implicated. But in some respects, the lawsuit on appeal now specifically

16

requests to move the line from where the parties "historically thought the [boundary] line was." The majority opinion is simply recognizing that if the schools' common boundary line is now moved, the result is an annexation of the Disputed Area, which we previously held CISD cannot now do.

Therefore, we hold that if the objective is to challenge the prior elections or to change or modify the judgments or orders of the commissioners courts by seeking authority to actually move the districts' sixty-year-old boundary line and thus transfer the Disputed Area from one independent school district to another, then such would be an impermissible election contest and an invalid collateral attack via a declaratory judgment action. We hold that upon remand the only proper avenue of declaratory judgment relief is to seek a clarification of the actual, on-the-ground location of the long-existing boundary between the two school districts.

We overrule the balance of NWISD's third issue on appeal.

We affirm the trial court's denial of NWISD's plea to the jurisdiction to the limited extent that CISD seeks a declaratory judgment regarding the parties' orders and judgments creating their existing respective school districts' sixty-year actual boundary location. Because we sustain NWISD's third issue to the extent CISD seeks to contest and challenge NWISD's 1948 and 1949 elections and the orders creating NWISD and its boundaries, in an attempt to move the existing boundary, we reverse the trial court's denial of NWISD's plea to the jurisdiction

17

as to that contest and challenge.  Therefore, we remand the case to the trial court for trial on the limited basis set forth in this opinion.[7]

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

EN BANC

DAUPHINOT, J., filed a concurring and dissenting opinion.

GARDNER, J., filed a concurring and dissenting opinion in which WALKER and GABRIEL, JJ., join.

DELIVERED:  June 19, 2014

---

[7]Six of the justices agree that NWISD may proceed in the trial court on a declaratory judgment action to clarify the school districts' existing sixty-year actual boundary location:  Chief Justice Terrie Livingston, Justice Anne Gardner, Justice Sue Walker, Justice Bob McCoy, Justice Bill Meier, and Justice Lee Gabriel.  Additionally, four justices agree that the trial court does not have jurisdiction to hear any claim regarding an attempt to move the existing boundary by disputing the result of the 1948 and 1949 elections and subsequent commissioners courts' orders:  Chief Justice Terrie Livingston, Justice Lee Ann Dauphinot, Justice Bob McCoy, and Justice Bill Meier.  Accordingly, a majority of the justices agree to remand for the trial court to consider CISD's declaratory judgment claim regarding clarification of the boundary line between the two districts.