**NORTHWEST INDEPENDENT SCHOOL DISTRICT, Josh Wright, Mark Schluter, Devonna Holland, Judy Copp, Ann Davis-simpson, Mel Fuller, Lillian Rauch, and Karen G. Rue, Appellants**

v.

**CARROLL INDEPENDENT SCHOOL DISTRICT, Appellee**

and

**In re Northwest Independent School District, Relator**

**NO. 02-16-00010-CV, NO. 02-16-00014-CV**

Court of Appeals of Texas, Fort Worth.

DELIVERED: October 20, 2016

**23.** *See* Tex. R. App. P. 33.1; *Johnson,* 475 S.W.3d at 435.

Richard M. Abernathy, Charles J. Crawford, Abernathy Roeder Boyd & Hullett, P.C., McKinney, TX, for Appellants in No. 02-16-00010-CV.

Frank Gilstrap, Hill Gilstrap, PC, Arlington, TX, for Appellee in No. 02-16-00010-CV.

Richard M. Abernathy, Charles J. Crawford, Abernathy Roeder Boyd & Hullett, P.C., McKinney, TX, for Relators in No. 02-16-00014-CV.

Frank Gilstrap, Hill Gilstrap, PC, Arlington, TX, for Real Party in Interest in No. 02-16-00014-CV.

## OPINION

### LEE GABRIEL, JUSTICE

We consolidated this appeal and petition for writ of mandamus or prohibition for en banc submission. In the appeal, appellants Northwest Independent School District, Northwest's trustees, and Northwest's superintendent appeal from the trial court's order denying their third plea to the jurisdiction. In the original proceeding, Northwest seeks either a writ of mandamus or a writ of prohibition barring the trial court from acting on its stated intention to try all issues raised by the pleadings. In both, Northwest argues that the trial court may try nothing other than what this court previously allowed in affirming the trial court's order denying Northwest's second plea to the jurisdiction. We affirm the trial court's denial of Northwest's third plea to the jurisdiction and deny Northwest's petition for writ of mandamus or prohibition.

## I. BACKGROUND

### A. BOUNDARY DISPUTE

The factual and procedural history of this case is byzantine, protracted, and laborious. While it would be easy to mechanically detail all the facts leading to the current dispute before us, such a recitation would run the risk of diverting our focus from the very narrow issue we are faced with today in this interlocutory appeal and request for extraordinary writ relief. Suffice it to say that Northwest and appellee Carroll Independent School District dispute the location of the boundary line dividing them. Carroll contends that the boundary line between the two school districts should be the same boundary line that exists between Denton County and Tarrant County (the county line), which we resolved in a prior appeal between those two counties based on the counties' interlocal agreement approving the county line as their boundary. *See Tarrant Cty. v. Denton Cty.*, 87 S.W.3d 159, 175 (Tex. App.–Fort Worth 2002, pet. denied) (op. on reh'g). Northwest, on the other hand, asserts that the school districts' actual boundary line is located farther south than the county line and comports with the boundary Northwest described by metes and bounds in its filings to the Texas Education Agency.[1] This disputed area—a strip of land lying to the south of Northwest and to the north of Carroll—encompasses 842 acres and, apparently, less than 200 students. Northwest currently levies and collects taxes in the disputed area.

### B. PRIOR PROCEEDINGS

Carroll filed suit against Northwest in 2005 over the location of the districts' boundary line. Northwest filed a plea to the jurisdiction, the trial court granted the plea, and Carroll filed an interlocutory ap-

---

1. *See* Tex. Educ. Code Ann. § 13.010(a) (West 2012).

peal. We reversed the trial court's order and remanded to the trial court "for further proceedings" after concluding that the trial court had jurisdiction over Carroll's claims for trespass to try title and for a declaratory judgment regarding its rights and duties in the disputed area. *Carroll ISD v. Nw. ISD*, 245 S.W.3d 620, 625–26 (Tex. App.–Fort Worth 2008, pet. denied) (*Carroll I*). We specifically stated that Carroll was "not attempting by its suit to change the existing boundary line between the two school districts" or seeking "to detach and annex the Disputed Area from Northwest"; rather, Carroll was simply seeking "a judicial determination regarding in which of these districts the Disputed Area is, and always has been, located." *Id.* at 624–25.

On remand, Carroll amended its petition to allege that although Carroll "contends that the common boundary between the two school districts is located on the county line," Northwest "has disputed this contention in public filings and otherwise." Northwest filed a second plea to the jurisdiction, which the trial court denied. Northwest filed an interlocutory appeal from the trial court's denial. In three opinions on en banc reconsideration, we affirmed the trial court's denial and, in a corrected judgment, remanded the case to the trial court for trial "regarding the meaning of the orders and judgments creating the actual boundary location between the two school districts." *Nw. ISD v. Carroll ISD*, 441 S.W.3d 684, 694–96 (Tex. App.–Fort Worth 2014, pet. denied) (ops. on reconsideration) (*Carroll II*).

The opinions consisted of (1) a lead opinion, authored by Chief Justice Livingston and joined by Justices McCoy[2] and Meier; (2) a concurring and dissenting opinion, authored by Justice Gardner and joined by Justices Walker and Gabriel; and (3) a

concurring and dissenting opinion authored by Justice Dauphinot. *Id.* at 686, 694. A majority of the court agreed only that the trial court's order denying Northwest's plea to the jurisdiction should be affirmed in some respect. *Id.* at 694–96. *See generally* Tex. Const. art. V, § 6 ("The concurrence of a majority of the judges sitting in a section is necessary to decide a case."). The lead opinion remanded Carroll's claims on a limited basis, which was included in a subsequent corrected judgment. The lead opinion stated that it was "simply recognizing that if the schools' common boundary line is now moved, the result is an annexation of the Disputed Area, which we previously held [Carroll] cannot now do." *Carroll II*, 441 S.W.3d at 693. But as stated above, we concluded in *Carroll I* that Carroll was not seeking an annexation. In any event, the Dauphinot opinion concluded that a remand on any of Carroll's claims would be inappropriate and all of Carroll's claims should be dismissed because the trial court did not have jurisdiction over any of Carroll's claims as pleaded. *Id.* at 695. The Gardner opinion, joined by two justices as was the lead opinion, concluded that a limited remand was inappropriate because the trial court had jurisdiction over Carroll's claims as pleaded. *Id.* at 696, 701–02. The Gardner opinion stated that characterizing Carroll's claims as attempting to "move" an existing boundary was "misleading":

> Contrary to the [lead opinion's] terminology (used by it to describe Northwest's and Carroll's common boundary), no language in the documents pertaining to the elections or in the field notes or the commissioners courts' orders creating the school districts identifies the location of the districts' common boundary as the "long-honored" boundary, or ties

---

**2.** Justice McCoy is no longer a member of this court.

it to the "then-existing" county line. Those terms in the [lead opinion] appear only in Northwest's brief. It is only Northwest's position that this court "moved" the county line from its "historic," "long-accepted" location by our decision in our previous case in which we established the location of the Tarrant–Denton County line .... Use of that terminology by the [lead opinion] gives a misleading impression that this court is assuming as true that a different location, namely, the 1852 "White line," [which Northwest described in its filings to the Texas Education Agency,] was somehow previously established and should prevail as the districts' mutual boundary rather than the Tarrant–Denton County line because the White line is where representatives of the school districts believed the county line to be when the school districts were created. But that issue, if it is an issue at all, has yet to be determined, and is not before us on this appeal.

*Id.* at 696.

### C. Rulings Currently at Issue

After the *Carroll II* remand, Carroll again amended its petition, adding Northwest's trustees and superintendent as defendants for the purpose of raising an ultra vires claim.[3] In this claim, Carroll alleged that the trustees and superintendent, in their official capacities, committed "illegal, unauthorized and *ultra vires*" actions by exercising authority over the disputed area.[4] Northwest filed a combined third plea to the jurisdiction, special exceptions, and a motion for summary judgment. In its special exceptions and motion for summary judgment, Northwest argued that Carroll's ultra vires claim impermissibly exceeded the scope of this court's remand. In its plea to the jurisdiction, Northwest contended that Carroll's ultra vires claim was not ripe because it depended on uncertain, contingent, or hypothetical future events—a judicial determination that the disputed area is located within Carroll's boundaries—which "likely" would never occur based on this court's limited remand in *Carroll II*. Northwest also moved to quash some of Carroll's requested discovery, specifically Carroll's request for demographic data to determine the number of students in the disputed area, because such inquiry, again, was outside the scope of this court's remand.

On December 17, 2015, the trial court held a hearing on Northwest's combined motion. At the hearing, the parties and the court discussed several scheduling deadlines in preparation for trial. The trial court then denied Northwest's motion to quash Carroll's discovery request for demographic information. In arguing its plea to the jurisdiction, Northwest stated that the trial court did not have subject-matter jurisdiction over Carroll's ultra vires claims against the trustees and superintendent and that the only issue that could be tried on remand was "[w]here on the ground is the line that the parties have historically recognized and acquiesced to

---

3. Carroll again raised its claim that Northwest disputed that the county line was the districts' boundary "in public filings and otherwise." Carroll asserts that other than the ultra vires claim, the sixth amended petition was "a verbatim copy of [Carroll's] Fifth Amended Petition," which was at issue in *Carroll II. See Carroll II*, 441 S.W.3d at 693.

4. Carroll asserts that this claim was necessary to "forestall[ ]" Northwest's immunity argument. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009) (explaining ultra vires claim brought against governmental actor in his official capacity is not barred by sovereign immunity because such a claim asserts actor "acted without legal authority" and, thus, does "not seek to alter government policy but rather to enforce existing policy").

for the last 60 years." Northwest then argued that because the disputed area "is not going to change hands" based on the limited nature of this court's remand, Carroll's ultra vires claim was not ripe. The trial court denied the plea and the special exception. After Carroll confirmed that it and Northwest could not agree on what issues were properly before the trial court on remand, the trial court stated on the record that "everything" would be tried so this court could decide any appeal without the necessity for further trial-court proceedings:

> We're going to try this thing [in a bench trial], and we're going to give something to the appellate court that hopefully they can render on, and they can tell us exactly what they want us to do so that this case can go away. I think unless we have a trial on this, it's never going to go anywhere.
>
> ....
>
> ... We can try everything. I mean, we can try what you think we're trying and what they think we're trying and then reach a verdict.
>
> ....
>
> ... Because ... I can make a ruling on where this line has been traditionally for 60 years. I can make that ruling. They may not agree that that's even a relevant ruling to even make, but I'll make it. And y'all can take that up to the appellate court and see if that's what they wanted, and they can have me rule on something that y'all don't think matters, and the appellate court can see if they want to hear that or not, too. And we'll give them all that information ..., and they can figure it out.
>
> But I think we have to do this. I know we like to do stuff pretrial to get rid of stuff, but let's just try it and get it over with. It's no different trying the case than it would be for me to rule pretrial.

> You'll still have a ruling and we'll have a verdict and we'll be done.

Northwest filed an interlocutory appeal from the trial court's denial of its plea to the jurisdiction asserting that Carroll's ultra vires claim was not ripe, divesting the trial court of jurisdiction. Northwest also filed a petition for a writ of mandamus or prohibition, arguing that the trial court's stated intention to try "everything" was an abuse of discretion because the trial court's jurisdiction was limited to the parameters of this court's remand, which did not include the ultra vires claim. *See generally Harris Cty. Children's Protective Servs. v. Olvera*, 77 S.W.3d 336, 342–43 (Tex. App.–Houston [14th Dist.] 2002, pet. denied) (concluding trial court did not have jurisdiction to determine claim on remand that fell outside the scope of appellate court's specific remand).

## II. DISCUSSION

Both Carroll and Northwest argue at length about the scope of our prior remand, which of this court's three opinions resulted in a plurality holding, and whether the corrected judgment and mandate control over any such holding. These arguments, while thought-provoking, shift our focus from the narrow issue we must ultimately decide: Whether the trial court has subject-matter jurisdiction over Carroll's claims as currently pleaded. We conclude it does.

In *Carroll I*, we did not preclude the trial court from developing and determining any remedy available to the parties regarding the location of the boundary between the districts, which would include Carroll's current alternative claim raising the trustees' and superintendent's alleged ultra vires actions based on the location of the districts' boundary. The lead opinion in *Carroll II* extended the scope of Carroll's claims to encompass an impermissible at-

tempt to detach or annex the disputed area—*Carroll I* stated the opposite. *Carroll I*, 245 S.W.3d at 624–25. Upon study of the additional briefing and the facts and arguments developed in the trial court after *Carroll II*, we conclude that the trial court's subject-matter jurisdiction over Carroll's current claims is not limited despite any contrary language in *Carroll II*'s lead opinion, its corrected judgment, or its mandate.[5] Corrected judgment and mandate notwithstanding, no majority or plurality of this court in *Carroll II* concluded that a limited remand was appropriate.

The trial court concluded that it had subject-matter jurisdiction over Carroll's claims pleaded against Northwest regarding the disputed area. We agree and conclude that the trial court has jurisdiction over Carroll's claims as pleaded. *See McLeod ISD v. Kildare ISD*, 157 S.W.2d 181, 183 (Tex. Civ. App.–Texarkana 1941, writ ref'd w.o.m.) (in quo warranto proceeding between school districts regarding appropriate tax levy based on boundary dispute, concluding trial court had jurisdiction because "[t]he fact that the question of where upon the ground respondents' true boundary lay was necessary to be determined in order to adjudicate the matter of whether respondent was unlawfully exercising the taxing powers charged against it"); *cf. Bd. of Sch. Trs. of Young Cty. v. Bullock Common Sch. Dist. No. 12*, 55 S.W.2d 538, 540 (Tex. Comm'n App. 1932, judgm't affirmed) (holding courts have initial power to grant relief from orders changing established boundaries of school districts). ·

This matter has been bouncing around the trial and appellate courts of Texas for over ten years with nary a ruling on the merits in sight. We are persuaded by the trial court's reasoning that the most prudent course of action is to allow the parties to develop a complete record in the trial court as allowed by the rules of pleading, procedure, and evidence. We concluded in *Carroll I* that the trial court has subject-matter jurisdiction over Carroll's claims regarding the location of the boundary between the districts, specifically in the disputed area, and we so conclude again.[6] No matter what label Carroll attached to its claims in its live pleadings, the location of the boundary between the two districts is the fulcrum around which all claims between Carroll and Northwest revolve. *See San Patricio Cty. v. Nueces Cty.*, 492 S.W.3d 476, 486 (Tex. App.–Corpus Christi May 12, 2016, pet. filed) (in statutory boundary dispute between counties, holding trial court had jurisdiction to declare boundary line because Declaratory Judgments Act, which was claim raised, does not "change the nature of the controversy").

Accordingly, Carroll's current claims are ripe as Northwest currently reaps the benefits from and bears the responsibility for the disputed area, which is contested by Carroll based on its claims implicating the location of the boundary between the districts. *Cf. Camarena v. Tex. Emp't Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988) (holding suit to declare statute unconstitutional not ripe because state officials had not acted on the statute); *Scarbrough v.*

---

**5.** It is important to acknowledge that our ordered "remand" to the trial court in *Carroll II* arguably was ill conceived as there was no error found in the trial court's ultimate jurisdictional ruling regarding the location of the districts' boundary, which is the gravamen of Carroll's claims as pleaded. *See* Tex. R. App. P. 44.1(a), 43.2(d); *Chrismon v. Brown*, 246

S.W.3d 102, 116 (Tex. App.–Houston [14th Dist.] 2007, no pet.).

**6.** Carroll recognizes that the only claims it may pursue or intends to pursue are those implicating the location of the districts' boundary.

*Metro. Transit Auth.*, 326 S.W.3d 324, 337–38 (Tex. App.–Houston [1st Dist.] 2010, pet. denied) (holding claim that proposed construction would affect homeowner's property rights was not ripe because there was no evidence construction would affect her property). Carroll has alleged that it has been and will continue to be injured by Northwest's affirmative actions in the disputed area; thus, Carroll's claims are ripe, conferring subject-matter jurisdiction on the trial court. *See Scarbrough*, 326 S.W.3d at 337; *see also* 1A Tex. Jur. 3d *Actions* § 21 (2012) (discussing necessity of ripeness and stating that ripeness "emphasizes the need for a concrete injury for a justiciable claim to be presented").

Carroll's claims as currently pleaded are nothing more than a request for a judicial determination regarding the location of the actual boundary between the districts. We hold that the trial court has the subject-matter jurisdiction to make this determination based on the current pleadings and under the applicable rules of procedure and evidence. As we have noted, Northwest and Carroll hotly contest whether we previously issued a majority opinion and, if so, whether that majority controls over the corrected judgment and mandate. We certainly recognize this confusion but emphasize that our holding today, which is agreed to by a majority of the sitting justices of this court, is clear: The trial court did not err by denying Northwest's plea to the jurisdiction and has subject-matter jurisdiction to determine the claims raised by the parties in their current pleadings.

## III. CONCLUSION

Because the trial court has subject-matter jurisdiction over Carroll's claims as currently pleaded, we affirm the trial court's order denying Northwest's third plea to the jurisdiction.[7] *See* Tex. R. App. P. 43.2(a). Based on this jurisdiction, the trial court did not abuse its discretion by stating that it intended to adjudicate all claims before it. Therefore, we deny Northwest's petition for a writ of mandamus or prohibition. *See* Tex. R. App. P. 52.8(a).

LIVINGSTON, C.J., filed a dissenting opinion in which DAUPHINOT, J., joins.

## DISSENTING OPINION

### TERRIE LIVINGSTON, CHIEF JUSTICE

As an original member of the panel in *Carroll I* and *Carroll II*, I must respectfully dissent to the majority's opinion in the appeal because I believe that a majority of this court did limit what the trial court could consider *as to the issues raised in Northwest ISD's second plea to the jurisdiction.* The supreme court declined to review that majority opinion. In accordance with principles of stare decisis, then, this court should not allow the trial court to force Northwest ISD to try issues of law that this court has already decided, even if only by a 4-3 majority. *See Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986); *Thomas v. Torrez*, 362 S.W.3d 669, 679 (Tex. App.–Houston [14th Dist.] 2011, pet. dism'd) (noting that court of appeals

---

7. Because this is an appeal from an interlocutory order allowed by statute that restricts what issues we may address, we express no opinion on the trial court's handling of Northwest's motion for summary judgment, special exceptions, or motion to quash. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2016); *Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616, 626–28 (Tex. App.–Fort Worth 2007, pet. denied) (op. on reh'g). Accordingly, we do not address Northwest's arguments involving the propriety of the trial court's discovery rulings.

was bound by its own precedent); *Anheuser–Busch Cos. v. Summit Coffee Co.*, 934 S.W.2d 705, 709 (Tex. App.–Dallas 1996, writ dism'd by agr.); James Wm. Moore & Robert Stephen Oglebay, *The Supreme Court, Stare Decisis and Law of the Case*, 21 Tex. L. Rev. 514, 515–17 (1943). The resolution of this appeal is dictated by the standard of review set forth by the supreme court in *Texas Department of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004), which I believe the majority has failed to apply.

In the panel's opinion in *Carroll I*, written by then Chief Justice John Cayce, we reversed the trial court's judgment granting Northwest ISD's first plea to the jurisdiction.[1] 245 S.W.3d 620, 626 (Tex. App.–Fort Worth 2008, pet. denied). The grounds raised in that plea were that a school district is not a person under section 37.011 of the civil practice and remedies code, that the subject matter of the case was not appropriate for relief under section 37.004(a) of the civil practice and remedies code, that a boundary dispute may not be asserted as a declaratory judgment action, that "the exclusive method for changing boundary lines between school districts" is that set forth in section 13.051 of the education code, and that Carroll ISD was improperly attempting to circumvent the quo warranto procedure. Tex. Civ. Prac. & Rem. Code Ann. §§ 37.004(a), 37.011 (West 2015); Tex. Educ. Code Ann. § 13.051 (West 2012). The trial court's or-

der granting the plea to the jurisdiction was based on its specific finding that "the underlying claim ... i.e., ... that the existing boundary line between two Texas independent school districts should be modified ... must be submitted to the appropriate authority or authorities as required by the Texas Education Code." We determined that Carroll ISD's declaratory judgment claim was not barred *under section 13.051 of the education code* because Carroll ISD was not seeking to detach the annexed area for purposes of that section in that Carroll ISD was contending that the disputed area had never been part of Northwest ISD's territory in the first place; thus, any move of the line, according to what Carroll ISD had pled, would be a correction of a long-ago error rather than a deannexation. *Carroll I*, 245 S.W.3d at 624–25. The other grounds in Northwest ISD's motion—which we addressed in case the trial court's ruling could be upheld on those grounds—did not involve the issue raised in this appeal. Therefore, our holding was and should be limited to the only ground for dismissal raised by Northwest ISD in that particular plea to the jurisdiction. *Id.* I note that in that opinion, we acknowledged that there is "an existing boundary line" that Carroll ISD contends is not the actual boundary line. *Id.* at 624.

In *Carroll II*, we reviewed the grounds for dismissal raised in subsequent plea-to-the-jurisdiction documents[2] filed by

---

1. Northwest ISD filed its original plea to the jurisdiction combined with its original answer in response to Carroll ISD's original petition. After Carroll ISD filed a first amended petition, Northwest ISD filed another combined document containing the same plea to the jurisdiction and its first amended answer. The trial court's docket sheet indicates that instead of granting this plea, the trial court granted Northwest ISD's special exceptions and allowed Carroll ISD to replead multiple times. Northwest ISD filed yet another combined plea to the jurisdiction (this time with

additional grounds) and third amended answer in response to Carroll ISD's fourth amended petition; this is the plea to the jurisdiction that was at issue in *Carroll I*. We consider this first grouping the "first plea to the jurisdiction."

2. After remand in *Carroll I*, Northwest ISD filed a second plea to the jurisdiction in response to Carroll ISD's fourth amended petition, which it supplemented twice. It then filed another, subsequent combined plea to the jurisdiction and fifth amended answer in

Northwest ISD, some of which were the same as those raised in its first plea to the jurisdiction. *Carroll II*, 441 S.W.3d 684, 691–93 (Tex. App.–Fort Worth 2014, pet. denied) (en banc) (op. on reh'g). None of the justices thought that those grounds should be revisited. *Id.* at 688, 694–95. The new plea-to-the-jurisdiction ground raised by Northwest ISD in *Carroll II* was that Carroll ISD's claims were actually an election contest governed exclusively by the election code and therefore an impermissible collateral attack on the commissioners' court orders implementing the election results.

In the opinion that I authored, which was joined in full by Justices McCoy and Meier and in part by Justice Dauphinot, I reviewed Carroll ISD's then-live petition against the new grounds for dismissal asserted by Northwest ISD. *Id.* at 688–90. I concluded that to the extent Carroll ISD's petition could be read to claim that the boundary line between the two districts was incorrectly drawn in the 1949 commissioners' court orders implementing the election results establishing the boundaries of Northwest ISD—under the theory that the legal description references to the "County Line between Denton and Tarrant Counties" (the County Line) meant whatever the then-disputed boundary line was ultimately determined to be—such a challenge would be an impermissible election contest and collateral attack on those orders; thus, Northwest ISD was entitled to a dismissal to the extent Carroll ISD was making such a claim. *Id.* at 691–93.

Although I did not expressly state this in the opinion, I note now that the 1949 commissioners' court orders specifically incorporate the legal descriptions of the school district boundaries. And although

the metes and bounds legal description establishing Northwest ISD references one of the parts of the boundary as being the County Line, it also clearly refers to the entire land area as containing 136,322 total acres or 213 square miles. If the County Line were disputed at that time or not fixed for purposes of those commissioners' court orders, then there would have been no way to calculate a total acreage or square mileage for the newly created school district. Thus, although the commissioners' court orders referred to a distinct area with defined boundary lines, Carroll ISD would have this court and the trial court believe that it had disputed this boundary line since its inception despite (1) its failure to present any supportive factual evidence in response to Northwest ISD's plea to the jurisdiction that it has ever disputed this defined boundary line before the final judgment in *Denton Cty. v. Tarrant Cty.*, 139 S.W.3d 22 (Tex. App.–Fort Worth 2004, pet. denied), and (2) the deposition testimony of its 2010 superintendent that Carroll ISD believed that the boundary line that the parties had honored since the inception of Carroll ISD was correct until it "discovered ... through court action that ... the line may have moved north." Absent evidence of a latent ambiguity, which Carroll ISD has after every opportunity failed to produce, Carroll ISD's argument that the boundary line established in 1949 is somewhere other than as established in those orders is a contest of or collateral attack on those orders.

Although in *Carroll II* a majority determined that the County Line arguments would amount to an impermissible election contest or collateral attack, keeping in mind the standard of review that requires

response to Carroll ISD's fifth amended petition. We consider this grouping of documents

the "second plea to the jurisdiction."

us to liberally construe pleadings, I also concluded that to the extent Carroll ISD's petition could be read to seek a declaratory judgment establishing the existing line as referred to in the commissioners' court orders establishing the districts, then Northwest ISD was not entitled to a dismissal as to that one possible, broad reading of Carroll ISD's petition. 441 S.W.3d at 692–93. Because our review of the trial court's ruling was governed by the standard articulated in *Miranda*, we were mindful of the principle that "[i]f the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court[']s jurisdiction *but do not affirmatively demonstrate incurable defects in jurisdiction*, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend." 133 S.W.3d at 226–27 (emphasis added). Thus, we considered Northwest ISD's jurisdictional arguments in light of whether Carroll ISD could possibly replead to avoid the jurisdictional issues raised. *See id.*

In her concurring and dissenting opinion in *Carroll II*, Justice Dauphinot made clear that she "agree[d] with much of the substance of the majority opinion" and therefore concurred in part. *Carroll II*, 441 S.W.3d at 694. She disagreed with remanding any part of the suit because she believed that Carroll ISD's petition could not be read so broadly as to encompass a request for a declaratory judgment construing the meaning of the boundary line in the commissioners' court orders because of a latent ambiguity. *Id.* at 695. In other words, she disagreed with how broadly *Miranda* should be applied to Carroll ISD's then-live pleading. Justice Gardner's dissenting opinion, joined by Justices Walker and Gabriel, also agreed with the parts of my opinion declining to revisit *Carroll I*. *Id.* The dissenting justices did not believe that Carroll ISD's then-live pleading could be read in any way as an

election contest or impermissible collateral attack of the commissioners' court orders. *Id.* Therefore, four justices agreed that any attempt by Carroll ISD to establish the Tarrant-Denton County line located on the ground as a result of the (separate) litigation between those two counties as the districts' boundary line would be an impermissible collateral attack on the commissioners' court orders putting the school district elections into effect.

However, on remand, Carroll ISD made it clear that it has no intention of repleading in accordance with the holding in *Carroll II*. In its Sixth Amended Petition, filed after this court issued its corrected judgment in *Carroll II*, Carroll ISD once again amended its petition to add ultra vires claims against the named school officials for exercising and purporting to exercise Northwest ISD's authority "over the territory that is in dispute in this litigation" because that territory is "located within the boundaries of" Carroll ISD. Carroll ISD again contended that when the boundary was described in the 1949 and 1959 commissioners' court orders, "there was a long-standing dispute over the location of the Tarrant/Denton County Line." By amending its petition solely to add ultra vires claims contending that Northwest ISD officials have wrongfully exercised jurisdiction in the Disputed Area, Carroll ISD has pleaded the exact same theory four of this court's then justices rejected. Because the second plea to the jurisdiction was based on questions of law rather than the resolution of jurisdictional facts, our holding in *Carroll II* was a resolution of a question of law, and, as such, the trial court is bound by it even though our ruling was on an interlocutory appeal. Therefore, in deciding the scope of its jurisdiction to try the case, the trial court was bound by this court's pronouncements in its opinion, judgment, and mandate, which clearly de-

cided the issue of law in Northwest ISD's favor. *See Hudson*, 711 S.W.2d at 630.

During oral argument in these pending proceedings, Carroll ISD's counsel made much of this court's decision to issue a corrected judgment in this case, stating that only this court knows why we would do such a thing. But the simple answer is this: because Carroll ISD asked us to. Our original judgment read as follows: "This court has considered the record on appeal in this case and holds that there was error in part of the trial court's order. ... We remand the case to the trial court for further proceedings on appellee's declaratory judgment claim." Carroll ISD filed a motion for rehearing in which it complained that there was no clear majority supporting the judgment. In quoting the above judgment, it underlined the words "there was error" and "remand." It noted that "[w]hile six justices have voted for remand, they all do not agree that 'there was error.'" To correct the problem, Carroll ISD urged this court to petition the supreme court to appoint a tiebreaking justice. *See* Tex. R. App. P. 41.2(b). In response, we issued a corrected judgment that removed the conclusion regarding error:

> We affirm the trial court's denial of appellant Northwest Independent School District's plea to the jurisdiction to the extent that appellee Carroll Independent School District seeks a declaratory judgment regarding the meaning of the orders and judgments creating the actual boundary location between the two school districts. Therefore, we remand the case to the trial court for further

proceedings on this declaratory judgment claim.

I believe that this corrected judgment accurately reflected a common agreement amongst six justices: three justices thought the trial court had jurisdiction only to the extent Carroll ISD was seeking a declaratory judgment regarding the meaning of the orders and judgments as to the long-honored and existing boundary line, and three others—not a majority—believed that Carroll ISD was not seeking to pursue an election contest; those three did not dispute that Carroll ISD could nevertheless seek a declaratory judgment regarding the meanings of the commissioners' court orders.[3] Either way, jurisdiction of the case would vest in the trial court upon the issuance of this court's mandate, *see Cessna Aircraft Co. v. Aircraft Network, LLC*, 345 S.W.3d 139, 144 (Tex. App.–Dallas 2011, no pet.), and the trial court was bound by the majority's conclusion on the question of law raised in the second plea to the jurisdiction, *Denton Cty.*, 139 S.W.3d at 23.

Because Carroll ISD did not replead in accordance with this court's majority opinion on the question of law in *Carroll II*, the trial court should have followed that holding, granted the third plea to the jurisdiction, and dismissed Carroll ISD's claims in accordance with the principles set forth in *Miranda*. I would reverse the trial court's denial of the third plea to the jurisdiction and render judgment dismissing Carroll ISD's petition. Because that ruling would moot the mandamus, I would dismiss the mandamus petition as moot.

**3.** In hindsight, it is understandable how the trial court would have difficulty interpreting the extent of its jurisdiction after *Carroll II*, as tends to be the case with any plurality decision with multiple opinions. Although perhaps it would have been more expedient to petition the supreme court to assign a tie-breaking justice, at the time we considered and issued our corrected judgment, the case had been pending in the trial and appellate courts for over nine years.

I share everyone's frustration with the tortured procedural course this case has followed in the trial court and appellate courts. To quote a sister court, "This case has created the ironic situation in which the procedural device of the interlocutory appeal—designed to quickly resolve questions of sovereign immunity—has generated unwarranted delay by permitting successive appeals under Tex. Civ. Prac. & Rem. Code § 51.014(8) (permitting the interlocutory appeal of an order that 'grants or denies a plea to the jurisdiction by a governmental unit . . .')." *City of Houston v. Harris*, 192 S.W.3d 167, 170 (Tex. App.–Houston [14th Dist.] 2006, no pet.) (citing *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 358 (Tex. 2001)). Unfortunately, by failing to defer to this court's prior majority holding on an issue of law in *Carroll II*, the majority decision on this third plea to the jurisdiction undermines the principle of stare decisis, having the unintentional effect of contributing to even further taxpayer and party expense, delay, and the wasting of judicial resources. For that reason and the other reasons set forth in this dissenting opinion, I must respectfully dissent to the majority opinion.

DAUPHINOT, J., joins.